IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MIRNA GUZMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:19-CV-187-BR |
| | § | |
| ALLSTATE ASSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The Court makes the following findings of fact and conclusions of law pursuant to Rule

52(a) of the Federal Rules of Civil Procedure following a two-day bench trial on October 31 and

November 1, 2022. For the reasons that follow, the Court FINDS and CONCLUDES that Allstate

Assurance Company ("Allstate" or "Defendant") is entitled to judgment as to its claim for

declaratory relief and as to Plaintiff Mirna Guzman's ("Mrs. Guzman") claims. The Court,

therefore, will enter judgment in favor of Allstate on all claims in accordance with this

memorandum opinion and order.

In preparing this memorandum opinion and order, the Court carefully considered the trial

testimony and exhibits and applied the standard in this circuit for findings of fact and conclusions

of law. *Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998). In accordance

with that standard, the Court will not set out its findings and conclusions in "punctilious detail,"

trace the claims issue by issue and witness by witness, "or indulge in exegetics, parsing or

declaiming every fact and each nuance." *See id.* (internal quotations and citations omitted); *see*

*also Tinker, Inc. v. Poteet*, 2017 WL 4351304 n.1 (N.D. Tex. 2017). The facts contained herein

are either undisputed, or the Court has made the finding based on the credibility or believability of

each witness. In doing so, the Court considered all the circumstances under which the witness testified, including: the relationship of the witness to Plaintiff or Defendant; the interest, if any, the witness has in the outcome of the case; the witness' appearance, candor, demeanor, and manner of testifying while on the witness stand; the reasonableness or unreasonableness of the witness' testimony; the opportunity of the witness to acquire knowledge concerning the facts to which they testified; the extent to which the witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or unimportant detail. When necessary, the Court comments on the credibility of a witness or the weight given to a witness' testimony. Where appropriate, any finding of fact herein that should more appropriately be regarded as a conclusion of law will be deemed as such, and vice versa.

## I.  Procedural Background

Mrs. Guzman filed her Original Petition on August 28, 2019, in state court. (ECF 1). Allstate removed the dispute to this Court and filed a Counterclaim for Declaratory Judgment. (ECF 1, 1-1, 7). The parties consented to magistrate judge jurisdiction for all proceedings. (ECF 14).

In December 2020, the Court granted Allstate's motion for summary judgment and entered judgment in Allstate's favor (ECF 42), which Mrs. Guzman appealed. On November 10, 2021, the United States Court of Appeals for the Fifth Circuit issued its opinion reversing the Court's grant of summary judgment in Allstate's favor and remanding to this Court for further proceedings. (ECF 52). The matter was then set for trial.

The undersigned conducted a two-day bench trial on October 31 and November 1, 2022. (ECF 97, 98). During the trial, the Court heard testimony from Mrs. Guzman, Martha Mendoza, Saira Ibarra, Edith Tarrango, and Val Munchez-van der Wagt. The Court admitted Joint Exhibits

No. 1–24, Plaintiff's Exhibits Nos. 1–13, and Defendants' Exhibits Nos. 1–14 prior to trial. Based on the evidence and arguments presented, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52.

## II.    Findings of Fact

Saul D. Guzman, Plaintiff's husband, completed and signed Parts 1 and 2 of an Application for Life Insurance for a $250,000 life insurance policy with Allstate on August 17, 2017. (Jt. Ex. 1, 2). Mr. Guzman was quoted a Standard Non-Tobacco premium rate, indicating that he was not a smoker or had not used tobacco or nicotine products in the previous twelve months. (Jt. Ex. 4; Tr. at 274:1-23). Mr. and Mrs. Guzman both understood that the cost of the life insurance policy would be affected by his health and the results of the lab exam. (Tr. 76: 21–79:16).

The Application for Life Insurance Part 2 (the "Application") at Section A, Question li asked Mr. Guzman, "Do you currently use tobacco or nicotine?", to which Mr. Guzman answered "No." (Jt. Ex. 2 at 1). The Application at Section A, Question lk asked Mr. Guzman, "If 'no' to 1i, have you ever used tobacco or nicotine?", to which Mr. Guzman again answered "No." Section B, Question 3a of the Application asked Mr. Guzman, "In the past 10 years, have any Proposed Insureds been diagnosed with, or sought treatment or advice for: epilepsy or seizures, disorder of the brain or nervous system, depression, or other mental or nervous disorder?" (*Id*. at 2). Mr. Guzman answered "Yes," and disclosed that he had been treated for seizures since August 2001, had last seen a medical provider in July 2017, was currently taking seizure medication, and had not had a seizure in the past ten years.

The Application contained the following provision "I declare the answers written above are full and correct to the best of my knowledge and belief. I understand and agree that the statements above, along with the application, will be the bases for any insurance issued."

Prior to issuing the policy, Allstate's underwriter requested Mr. Guzman's medical records. Allstate received thirteen pages of medical records from Gloria Fuller, NP and Faith Medical Clinic, the medical provider identified in Part 2 of Mr. Guzman's Application for Life Insurance. (Pl. Ex. 2; Tr. at 258:4–9). The medical records, received in August 2017, stated that Mr. Guzman had never been a smoker as of July 27, 2015. (Pl. Ex. 2 at 11).

On September 3, 2017, Mr. Guzman submitted blood and urine samples as part of the application process. The urinalysis did not indicate the presence of nicotine. (Jt. Ex. 3 at 6). At trial, Allstate's former Chief Underwriter, Ms. Val Munchez-van der Wagt, testified based on her training and experience that nicotine would only remain in an individual's urine for twenty-four to forty-eight hours from last consumption. (Tr. at 208:25-209:3). On September 18, 2017, Allstate completed a telephonic inspection report with Mr. Guzman, reflecting that Mr. Guzman was asked the following questions: "Do you now use cigars, cigarettes, pipe, chew, or snuff?" and "Have you ever used tobacco in any form?" Mr. Guzman responded "No" to both questions. (Pl. Ex. 1; Def. Ex. 1).

On September 19, 2017, Allstate issued Policy Number 06T1E72410 with a face value of $250,000 insuring the life of Saul D. Guzman at a Standard Non-Tobacco annual premium rate of $290 (the "Policy"). (Jt. Ex. 4). The beneficiary of the Policy was Mrs. Guzman, Plaintiff and Saul D. Guzman's wife. The Policy contained a two-year incontestability clause stating, "We will not contest this policy after it has been in force during the lifetime of the insured for two years from its issue date except for failure to pay the premium required to keep this policy and its riders in force." (*Id.* at 10).

Mr. Guzman died on January 29, 2019. At the time of Mr. Guzman's death, all premiums on the Policy had been paid. In March 2019, Mrs. Guzman timely made a formal claim for the

Policy's death benefit as the primary beneficiary. (Jt. Ex. 19). Because Mr. Guzman's date of death was within two years of the Policy being issued, Allstate conducted a contestable claim investigation. (Def. Ex. 3). As part of that investigation, Allstate sought information about the representations Mr. Guzman made in the Application. During its investigation, Allstate obtained copies of Mr. Guzman's medical records in the Spring of 2019 from: (1) Baptist St. Anthony Health System; (2) Dr. Gincy Samuel and Texas Neurology; and (3) Faith Medical Clinic.

The medical records from Baptist St. Anthony Health System show Mr. Guzman was seen there on April 17, 2016, approximately sixteen months before he submitted his Application, and further reflect that Mr. Guzman was a current smoker. (Jt. Ex. 5 at 2, 5). Dr. Gincy Samuel of Texas Neurology in Dallas, Texas saw Mr. Guzman on June 29, 2016, around fourteen months before he submitted his Application; those records reflect that Mr. Guzman was a "current smoker" who smokes "some days, but not every day." (Jt. Ex. 6 at 1). The June 29, 2016 appointment was to obtain work clearance after Mr. Guzman had a seizure 3–4 weeks prior. (*Id*.; Tr. 93:15–94:5).

Faith Medical Clinic records show that Mr. Guzman was seen by nurse practitioner George M. Peterson on April 24, 2017, roughly four months before Mr. Guzman submitted his Application, and note that Mr. Guzman was a former smoker.  (Jt. Ex. 7 at 1). On May 31, 2017, roughly two-and-a-half months before he submitted his Application, Mr. Guzman again saw George M. Peterson at Faith Medical Clinic. (Jt. Ex. 8). This visit note reflects that Mr. Guzman was a "[c]urrent every day smoker." (*Id*. at 1). Another visit note from Faith Medical Clinic reflects that Mr. Guzman's "Social History" was reviewed again on July 1, 2017, roughly one-and-a-half months before he submitted his Application, and indicates that Mr. Guzman was a "[c]urrent every day smoker." (Jt. Ex. 9 at 1).

Val Munchez-van der Wagt ("Ms. Munchez-van der Wagt"), Allstate's Chief Underwriter, reviewed the contestable claim investigation conducted after Mr. Guzman's death. (Jt. Ex. 20); (Tr. at 218:4–11). The First Underwriting Referral notes that Mr. Guzman's medical records show he was a smoker in April 2016, a former smoker in May 2017, and an everyday smoker in May 2017. The records also reflect Mr. Guzman being a smoker after the Application was issued, including December 2018. The First Underwriting Referral also states that Mr. Guzman represented to Allstate that he had not had a seizure in over ten years; however, the medical records obtained show that he reported seizures to his primary medical providers in approximately April 2015, December 2015, and May 2016, resulting in a neurology referral. (Jt. Ex. 20). The First Underwriting Referral states: "Had we known he was a smoker we would not have issued this policy on a non-smoker basis."

On May 24, 2019, a Second Underwriting Referral was sent to Ms. Munchez-van der Wagt because additional medical records were received from Dr. Gincy Samuel at Texas Neurology. (Jt. Ex. 21; Tr. at 219:13–21). The Second Underwriting Referral repeated the smoking history uncovered via the claim investigation, and states: "based on the May 31, 2017 entry of current every day smoker, had we known he was a smoker we would not have issued this policy." (Jt. Ex. 21; Tr. at 220:1–11). If Mr. Guzman had disclosed his smoking history, Allstate would have issued him a policy at a higher premium rate. (Tr. at 218:4–11, 248:5–20).

Throughout the life insurance industry, premium rates are higher for individuals who use tobacco or nicotine. (Tr. at 222:1–20). To qualify for standard non-tobacco/nicotine rates, applicants cannot not have used any product containing tobacco or nicotine in the prior twelve months, except for occasional cigar use. (Def. Ex. 4 at 2; Tr. at 220:15–221:16; 223:20–25). Allstate's Tobacco premium rate is higher than its Non-Tobacco premium rate. (Tr. at 221:21–25).

Allstate's underwriting guidelines provide that any smoking-related misrepresentation is significant and requires rescission of the insurance policy. (Def. Ex. 4 at 3). On June 18, 2019, Allstate sent a letter to Mrs. Guzman denying her claim. (Jt. Ex. 23). The denial letter summarized the smoking-related information Allstate obtained during its contestable claim investigation and stated that, based on "the findings in the medical records and what was stated on the application, … the representations made by Mr. Guzman [in his Application for Life Insurance regarding his smoking history] were false and material to [Allstate's] decision to issue the policy in question." (*Id.*). Accordingly, Allstate's letter notified Mrs. Guzman that it was rescinding the Policy based on Mr. Guzman's material misrepresentations in the Application of his smoking history and enclosed a premium refund check. (*Id.* at 2).

Additional medical records were obtained from Northwest Texas Hospital after suit was filed. (Pl. Ex. 12). In summary, the medical records introduced at trial included the following references to Mr. Guzman's smoking, both before and after he submitted his August 2017 Application:

i.      September 7, 2013: Baptist St. Anthony Health System ("BSA") – "No tobacco" (Pl. Ex. 5 at 4)

ii.     April 17, 2016: BSA – smoker, but not every day (Jt. Ex. 5 at 2, 5).

iii.    June 29, 2016: Texas Neurology – current smoker (Jt. Ex. 6)

iv.     December 10, 2016: Northwest Texas Hospital ("NWTH") – current smoker (Jt. Ex. 13 at 3), conflicting statements whether current smoker or not (Pl. Ex. 12 at 2)

v.      April 24, 2017: Faith Medical Clinic (Peterson, NP) – former smoker (Jt. Ex. 7)

vi.     May 31, 2017: Faith Medical Clinic (Peterson, NP)– current everyday smoker (Jt. Ex. 8)

vii.    July 1, 2017: Faith Medical Clinic (Fuller, NP) – everyday smoker (Jt. Ex. 9)[1]

---

[1] While this record is from a December 8, 2017 appointment, the social history indicating Mr. Guzman was an everyday smoker states that it was last updated on July 1, 2017. A July 1, 2017 appointment record was not entered at trial.

viii.   May 3, 2018: Faith Medical Clinic (Fuller, NP) – everyday smoker (Jt. Ex. 10)

ix.   June 27, 2018: Faith Medical Clinic (Lewis, NP) – everyday smoker (Jt. Ex. 11)

x.   July 23, 2018: NWTH – Former smoker (Jt. Ex. 13 at 2)

xi.   January 11, 2019: Faith Medical Clinic (Gloria Lewis, NP) – everyday smoker, notes that patient would like to quit smoking, and prescribed nicotine patches (Jt. Ex. 12)

xii.   January 28, 2019: BSA – current everyday smoker[2] (Jt. Ex. 14; Jt. Ex 15 at 3)

The medical records contain inaccuracies, such as a partially-incorrect address (Jt. Ex. 5; Tr. 86:7–16), incorrect pronoun and typos (Jt. Ex. 14 at 3), as well as incorrect family history (Jt. Ex. 15 at 2; Tr. 253: 13–16), and conflicting statements within the same record regarding whether or not Mr. Guzman was a smoker (Pl. Ex. 12).

At trial, Mrs. Guzman testified that during their eleven-year relationship, she had never seen Mr. Guzman smoke or smelled smoke on him or in his vehicle. (Tr. at 33:12–34:2; 118:19–120:13). Mrs. Guzman testified that her husband did not smoke any nicotine products.   She was around him a significant amount of time for many years; however, she was not with him at all times, including the eight to nine hours each day he was at work. (Tr. at 74:2–75:6). Mrs. Guzman testified that Mr. Guzman had a strong motivation to be truthful with his medical providers because of his seizure disorder. (Tr. 73:15–23).

Martha Mendoza, Mr. Guzman's sister, as well as Saira Ibarra and Edith Tarrango, Mrs. Guzman's sisters, each testified that, in their opinions, Mr. Guzman did not smoke. They each testified to regular contact with Mr. Guzman, and stated that they had never seen him smoke, smelled smoke on him or in his car, or seen any other indications that he was a smoker. (Tr. at

_____

[2] The evidence presented at trial established that Mr. Guzman would have been unable to provide this information himself due to his medical condition. (Jt. Ex. 16). The source of this information was not otherwise determined.

131:1–133:8; 160:1–161:2; 161:17–18; 162:5–6; 169:7–9; 169:22–23; 171:5–15). The family witnesses could not proffer any reason why an individual who had never smoked would tell their medical providers that they were a smoker. (Tr. at 156:18–21, 163:3–6, 174:1–4).

## II.    Conclusions of Law

Mrs. Guzman seeks relief for breach of contract, violation of the Texas Deceptive Trade Practices-Consumer Protections Act (DTPA), Texas Insurance Code § 542.003 ("Unfair Claims Settlement Practices Prohibited"), and Texas Insurance Code § 542.060. Allstate seeks declaratory judgment rescinding the Policy pursuant to Texas Insurance Code § 705.051, which also forms the basis for Allstate's affirmative defense. Because it is undisputed that the parties entered into a contract, which Allstate rescinded, the Court will only address whether the recission was proper.

### a.   Affirmative Defense – Misrepresentation

Under Texas Insurance Code § 705.051, "[a] misrepresentation in an application for a life, accident, or health insurance policy does not defeat recovery under the policy unless the misrepresentation: (1) is of material fact; and (2) affects the risks assumed."  The undisputed elements of a claim for rescission under this statutory provision are: (1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; and (4) the materiality of the representation. See *Brown v. Bankers Life & Cas. Co.*, Civil Action No. H-20-136, 2021 U.S. Dist. LEXIS 108904, at *10 (S.D. Tex. Mar. 29, 2021); *Landeros v. Transamerica Life Ins. Co.*, CIVIL ACTION NO. 7:17-CV-00475, 2020 U.S. Dist. LEXIS 102083, at *21 (S.D. Tex. May 8, 2020); *Colonial Penn Life Ins. Co. v. Parker*, 362 F. Supp. 3d 380, 403 (S.D. Tex. 2019). Additionally, the issue of whether "intent to deceive" is a required element of a claim for rescission under this statutory provision is disputed by the parties[3] and is currently on appeal before

---

[3] Plaintiff relies on *Mayes v. Massachusetts Mutual Life Insurance Co.* to argue that an insured's intent to deceive is an element of an insurer's misrepresentation defense. 608 S.W.2d 612, 616 (Tex. 1980).

the Texas Supreme Court (*Arce v. American National Insurance Co.* 633 S.W.3d 228 (Tex. App.—Amarillo 2021, pet. granted)). Therefore, the Court will also make a factual determination on this element.

### i. **Representation**

A representation is made if the applicant signs a statement indicating the answers in the application are true and correct when the policy is delivered. *Darby v. Jefferson Life Ins. Co.*, 998 S.W.2d 622, 628 (Tex. App.—Houston [1st Dist.] 1995, no writ.). The Application Part 2 at Section A, Question 1i asked Mr. Guzman, "Do you currently use tobacco or nicotine?" (Jt. Ex. 2 at 1). In response to this Question, Mr. Guzman stated "No." (*Id.*). The Application Part 2 at Section A, Question 1k asked Mr. Guzman, "If "no" to 1i, have you ever used tobacco or nicotine?" (*Id.*). In response to this Question, Mr. Guzman again stated "No." (*Id.*). Mr. Guzman signed Part 2 of the August 2017 Application, thereby declaring that the answers provided therein were full and correct to the best of his knowledge and belief. (*Id.* at 3).

The Court finds by a preponderance of the evidence that Mr. Guzman represented to Allstate in the August 17, 2017 Application that he did not currently use tobacco or nicotine products and had never used tobacco or nicotine products.

### ii. **Falsity of Representation**

A representation is false if it was untrue at the time it was made. *Legion Ins. Co. v. Texas Timber Grp.*, No. 3:99-CV-0932-BC, 2000 U.S. Dist. LEXIS 14488, at *10 (N.D. Tex. Sept. 29, 2000) ("It is now settled law that if the answers to the questions in the [insurance] application were untrue at the time they were given, the untrue answers constituted misrepresentations.").

The Court finds that Mr. Guzman was a tobacco user within twelve months of the Application, and that his representations to the contrary were false. Four separate medical records

reflect that Mr. Guzman was a smoker within twelve months of the Application. (Jt. Ex. 7, 8, 9, 13). Additional records reflect that Mr. Guzman was a smoker as far back as sixteen months prior to the Application. (Jt. Ex. 5, 6; Pl. Ex. 12). Medical records are independently reliable "in view of the patient's strong motivation to be truthful." Fed. R. Evid. 803(4) advisory committee's notes to 1972 amendment; *see Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 679 (W.D. Tex. 2015) ("The rationale behind [Rule 803(4)] is that a patient has a strong motivation to be truthful in making statements for diagnosis or treatment purposes."). Mrs. Guzman herself confirmed that Mr. Guzman specifically had a strong motivation to be truthful with his medical providers due to his seizure disorder, and that Mr. Guzman would have told his medical providers he was a smoker if he did indeed smoke.[4] (Tr. at 73:15-23).

The Court finds that the weight of evidence demonstrates that Mr. Guzman's representations in the Application were false at the time he made them. Mrs. Guzman and her family members each testified that Mr. Guzman never smoked. (Tr. at 33:12-15, 44:4-5, 119:20-23, 131:18-19, 132:20-25, 160:9-16, 160:24-161:2, 169:22-23, 171:5-8). Nevertheless, their testimony is contradicted by medical records obtained from BSA, NWTH, Texas Neurology, and Faith Medical Clinic. (Jt. Ex. 10, 11, 12,[5] 13; *see also* Jt. Ex. 14, 15). Mrs. Guzman's evidence demonstrates, at best, that Mr. Guzman vacillated between being a smoker and a non-smoker and effectively hid his smoking from his family. Similarly, while Mr. Guzman's September 3, 2017 urinalysis returned a zero result for the presence of nicotine (Jt. Ex. 3 at 6), testimony at trial

---

[4] The Court notes that while some inconsistencies exist in the medical records, such as typos and other *de minimus* errors, the Court is not swayed by the argument of Mrs. Guzman's counsel that the multiple, consistent references to Mr. Guzman being a smoker were also mere errors.

[5] While the Court notes that this visit occurred after submission of the Application, during his January 11, 2019 visit to Faith Medical Clinic, Mr. Guzman stated he would like to quit smoking and was prescribed nicotine patches. (Jt. Ex. 12).

established that nicotine would only remain in an individual's urine for twenty-four to forty-eight hours from last consumption. Therefore, that result is not dispositive of Mr. Guzman's smoking history during the entirety of the twelve months preceding the Application. (Tr. at 208:25-209:3, 209:15-25).

The Court finds by a preponderance of the evidence that Mr. Guzman's representations in the August 17, 2017 Application that he did not currently use tobacco or nicotine products, and had never used tobacco or nicotine products, were false when made.

### iii. **Materiality of False Representation**

"The representation is material if it actually induces the insurance company to assume the risk." *Darby*, 998 S.W.2d at 628. "[T]he principal inquiry in determining materiality is whether the insurer would have accepted the risk if the true facts had been disclosed." *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 29 (Tex. 1978). Materiality is determined at the time the policy issued, rather than the time of the loss. *Id*. at 30. Therefore, the existence of a causal connection between the fact misrepresented in an application for life insurance and the cause of death is not required in order to find that the fact misrepresented was material. (*See id.*).

The evidence demonstrates that Allstate would not have offered Mr. Guzman a policy at a Standard Risk, Non-Tobacco premium rate if he had disclosed his smoking history.[6] Ms. Munchez-van der Wagt testified that if Mr. Guzman had disclosed his smoking history, then Allstate would only have offered him a life insurance policy at a higher Smoker premium rate. (Tr. at 218:4-11, 219:13-220:11). This testimony is supported by Allstate's underwriting guidelines and the two underwriting opinions Ms. Munchez-van der Wagt rendered prior to Allstate's claim denial. (Def. Ex. 4; Jt. Ex. 20, 21). Allstate's underwriting guidelines in place when the Policy was

---

[6] Allstate's Tobacco premium rate is higher than its Non-Tobacco premium rate. (Tr. at 221:21-25).

issued establish that to qualify for the Standard risk, Non-Tobacco premium rate, an applicant must not have used any product containing tobacco or nicotine in the previous twelve months, except for occasional cigar use. (Def. Ex. 4 at 2) (Tr. at 223:20-25).

The Court finds by a preponderance of the evidence that Mr. Guzman's misrepresentations in the August 17, 2017 Application that he did not currently use tobacco or nicotine products and had never used tobacco or nicotine products were material.

### iv.   **Reliance by Allstate on False Representation**

Only actual knowledge of misrepresentations destroys a defense of fraud. *Koral Indus. v. Sec.-Conn. Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990) (per curiam). No evidence was submitted to establish that Allstate had *actual knowledge* prior to issuing the Policy in September 2017 that Mr. Guzman's misrepresentations in the Application that he did not currently use tobacco or nicotine products, and had never used tobacco or nicotine products, were false.

The Court finds by a preponderance of the evidence that Allstate relied on Mr. Guzman's misrepresentations in the August 17, 2017 Application that he did not currently use tobacco or nicotine products and had never used tobacco or nicotine products. In reliance on the misrepresentations in the Application, Allstate issued the Policy to Mr. Guzman at a Standard Non-Tobacco annual premium rate of $290. (Jt. Ex. 4 at 4).

### v.   **Intent to Deceive**

Having considered the first four elements, the Court now turns to the fifth element. There is disagreement between the parties and the caselaw as to whether intent to deceive is required as part of a misrepresentation defense. Allstate contends it is not a required element and points to the Court's summary judgment decision, the 2005 Texas Insurance Code recodification, and *Colonial Penn Life Insurance Co. v. Parker*. 362 F.Supp.3d 380 (S.D. Tex. 2019). Mrs. Guzman,

meanwhile, asserts that the Insurance Code recodification is non-substantive according to Texas state courts, specifically *Arce v. American National Insurance Co.* 633 S.W.3d 228 (Tex. App.—Amarillo 2021, pet. granted).

In its previous summary judgment decision, the Court followed the blueprint of *Colonial Penn* and determined that intent to deceive was not required. (ECF 42 at 9). The Fifth Circuit reversed on other grounds, while noting the disagreement. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 159 n.4 (5th Cir. 2021). The Court is thus presented with an opportunity to revisit its previous decision, this time with the benefit of *Arce*, and finds instead that it is appropriate not to decide. The Court reaches this conclusion for one reason: as of this writing, *Arce* is pending before the Texas Supreme Court, which will provide the ultimate clarity on whether intent to deceive remains an element of a misrepresentation defense. The Court sees no need to wait for that answer because it is not determinative on the outcome. Intent to deceive is present in the evidence; therefore, the outcome of this case is the same regardless of the ultimate decision in *Arce* as to that element.

The Court concludes that, when applying for the life insurance policy at issue in this case, Mr. Guzman intentionally misrepresented his status as a smoker. The evidence presented at trial establishes Mr. Guzman had a history of smoking and that he intentionally misrepresented his smoking history in the Application. Mr. Guzman knew his status as a smoker would amount to an increase of the policy premiums. (Tr. 76: 21–79:16). The Court, therefore, concludes that Mr. Guzman acted with the intent to deceive Allstate.[7]

---

[7] Likewise, the evidence establishes that Mr. Guzman minimized the extent of his epilepsy in the Application. Mr. Guzman represented on the Application that his last seizure was 10 years ago. (Jt. Ex. 2 at 2). The medical records show that, contrary to this statement, Mr. Guzman had several seizure events within five years of the Application. (Jt. Ex. 6; Pl. Ex. 11). Notably, Mr. Guzman travelled from Amarillo, Texas to Dallas, Texas in June 2016—a mere 14 months before he completed his Application—to be seen

For these reasons, and without determining whether it is a necessary element to Allstate's misrepresentation defense, the Court finds intent to deceive on the part of Mr. Guzman.

### III. Conclusion

Having satisfied each element of its affirmative defense by a preponderance of the evidence, and for the reasons stated herein, the Court finds that Allstate is entitled to judgment on its claim for declaratory relief under Section 705.051 of the Texas Insurance Code and on its affirmative defense to Mrs. Guzman's claims for breach of contract and violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code. Judgment is rendered accordingly.

IT IS SO ORDERED.

ENTERED February 16, 2023.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

---

by a neurologist after a seizure episode. (Jt. Ex. 6). That Mr. Guzman minimalized the extent of his epilepsy additionally demonstrates his intent to deceive Allstate in order to obtain the Policy at the desired rate.